Judge STUCKY delivered the opinion of the Court.
We granted Appellant’s petition to determine whether the military judge erred when he denied a defense motion to suppress the results of a search of Appellant’s computer. We hold that the military judge correctly denied the motion and affirm the decision of the United States Air Force Court of Criminal Appeals.
I.
A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification each of carnal knowledge, sodomy with a child, and possessing child pornography, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 925, 934 (2000), respectively. The sentence adjudged by the court-martial, and approved by the convening authority, consisted of a dishonorable discharge, confinement for six months, and reduction to the lowest enlisted grade.
II.
Appellant’s conviction stems from the sexual relationship he pursued with a fifteen-year-old female military dependent, TND. In the course of pursuing their investigation, two special agents of the Air Force Office of Special Investigations (AFOSI) questioned Appellant on April 8, 2003. After being read his Article 31, UCMJ, 10 U.S.C. § 831 (2000), rights, Appellant spoke with the agents, only to ultimately request a lawyer. He agreed to proceed without a lawyer when investigators could not make contact with the Area Defense Counsel. According to Appellant’s testimony, the agents informed him that their investigation would reveal enough evidence to sentence Appellant to confinement for life and would require Appellant to register as a sex offender. Since Appellant admitted that he communicated with TND via e-mail and instant messenger, the AFOSI agents explained that they wanted to search Appellant’s personal computer for evidence. Appellant signed an AF Form 1364, entitled, “Consent for Search and Seizure,” and consented to the general search of his home and computer.
After questioning Appellant, both AFOSI agents escorted him back to his house, where the three met another agent (apparently recruited to help disconnect and transport the computer), Appellant’s first sergeant, and a chaplain. Appellant’s wife arrived home shortly thereafter. Though he initially led the agents to his computer, once Appellant and his wife noticed the agents removing it, they objected. He testified that he told the agents the following:
[The computer] has our life on it. It has our photo albums on it. It’s got our banking on it. All of our financial stuff is on there. You know, I use it to do all of our bill paying and everything else. Our online business is on there. I was like “You can’t take it.” Then my wife even started going nuts at that time.
*7 In making her findings of fact on consent to the computer’s removal, the military judge apparently relied on the testimony of the chaplain present at the search. He testified that Appellant protested when the investigators began removing the computer and that Appellant ultimately acquiesced — stating, “Well, okay” — after the agents explained “they had to take it.” That is, after Appellant expressed his displeasure with the seizure of his computer, one of the investigators explained that they had to take the computer as a matter of routine. Only then, and in apparent resignation to the investigators’ actions (according to the military judge) did Appellant acquiesce to the seizure.
The investigators then removed the computer and transported it to the laboratory. The day-long forensic analysis revealed the e-mail and chat traffic between Appellant and TND, as well as files containing child pornography. Following standard practice, AFOSI agents copied the computer’s hard drive. A judge advocate at the legal office telephoned investigators on April 10, 2003 to report that Appellant had formally revoked his consent. In response to this development, the agents obtained a search authorization from a military magistrate. One of the agents testified that even if Appellant had never provided consent, or revoked the previously given consent, he would have sought search authorization from the magistrate in any event.
At trial, Appellant’s defense counsel made a motion to suppress all evidence obtained from the search of Appellant’s computer on the theory that Appellant involuntarily consented in the first place or, alternatively, revoked consent when he told agents not to take the computer. The military judge denied the motion and concluded that Appellant had freely consented and only withdrew consent on April 10, 2003 after child pornography had been discovered on the computer. She also found that even if Appellant had revoked his consent at the search site, the Government would have inevitably discovered the images because there was probable cause to search for e-mails and instant messages related to Appellant’s relationship with TND. The Air Force Court of Criminal Appeals affirmed those findings. United States v. Wallace, 2006 CCA LEXIS 282, 2006 WL 3085641 (A.F.Ct.Crim.App. Oct. 30, 2006) (unpublished).
III.
Appellant argues that the search of his home should have been more limited in scope and, in any event, should have stopped after he revoked his consent and merely acquiesced to the color of authority. Under Appellant’s theory, the military judge erred when she admitted the evidence of child pornography from the computer’s hard drive.
We review that ruling for an abuse of discretion. United States v. Rodriguez, 60 M.J. 239, 246 (C.A.A.F.2004). Findings of fact and conclusions of law are reviewed under the clearly erroneous and de novo standards, respectively. Id.
We find that even though Appellant initially consented to a general search of his home and computer, his subsequent exhortation to the AFOSI agents revoked any consent to seize the computer. However, while Appellant’s ultimate acquiescence to the seizure came under pressure from authority, we find no error in the military judge’s denial of Appellant’s motion to suppress because AFO-SI would have inevitably discovered the child pornography pursuant to a validly executed search authorization based on probable cause.
A.
Military Rule of Evidence (M.R.E.) 314(e)(3) states that consent to search “may be limited in any way by the person granting consent, including limitations in terms of time, place, or property and may be withdrawn at any time.” Appellant argues that because he gave his consent to search while under the impression that AFOSI agents would merely take copies of certain e-mails, the agents’ decision to take the computer itself went beyond the limits that he had imposed on the search in the first place. M.R.E. 314(e)(3).
That argument does not fit the facts of this case. Appellant’s signed “Consent for *8 Search and Seizure” form shows that he explicitly consented to a broad search that allowed AFOSI agents to search Appellant’s “residence — 118-1 Maine St. TAFB (Travis Air Force Base), CA; [and his] computer.” The form expressly gives investigators permission to “take any letters, papers, materials, articles or other property they consider to be evidence of an offense.” It is the objective reasonableness of the consent — not Appellant’s supposed impression — that controls.
M.R.E. 314(e)(3) implements the limited scope rule of Schneckloth v. Bustamonte, 412 U.S. 218, 248-49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), which requires investigators to account for any express or implied limitations on a consent to search. Those limitations, however, cannot be determined on the basis of the subjective intentions of the consenting party. As the Supreme Court concluded in Florida v. Jimeno, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), the standard is “that of ‘objective’ reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?” Id. at 251, 111 S.Ct. 1801 (rejecting the accused’s attempt to suppress evidence of cocaine possession by arguing that while he consented to a general car search at a traffic stop, he believed that consent did not permit the officer to open a closed bag that ultimately contained cocaine). Clearly, a reasonable person could conclude that an authorization permitting the search and seizure of “my computer” would permit AFOSI investigators not only to search, but also to remove the computer from the premises.
B.
Whatever the scope of his initial consent, Appellant argues that the military judge erred when she denied Appellant’s motion to suppress the evidence because Appellant clearly revoked that consent when he stated “[y]ou can’t take [the computer].” Appellant, however, conflates two separate concepts: the search and the seizure. His exhortation may have revoked his consent to seize the computer, but disapproval of the seizure cannot, without more, affect the consent to search in the first place.
A seizure of property, for purposes of the Fourth Amendment, occurs “when there is some meaningful interference with an individual’s possessory interest in ... property.” United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). As such, a seizure can occur either with or without an attendant search. See, e.g., Soldal v. Cook County, 506 U.S. 56, 62, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (holding that a police tow of tenant’s mobile home to dispossess that tenant constituted a seizure under the Fourth Amendment because the “Amendment protects property as well as privacy”). In either case, the search and the seizure necessitate separate analyses under the Fourth Amendment. See Skinner v. Railway Labor Executives’ Ass’n, 489 U.S. 602, 616, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (noting that the warrantless seizure of blood from railroad employees and the subsequent chemical analysis of that blood constituted separate invasions of the employees’ privacy interests). If searches and seizures are separate concepts, consent to one is not, without more, consent to the other; similarly, revoking consent to one does not of itself revoke consent to the other.
Appellant signed a “Consent for Search and Seizure” that clearly gave AFOSI the right to search Appellant’s residence and computer and to take away anything they considered evidence of an offense. His objection — “[y]ou can’t take it” — clearly embraced the seizure of the computer, and nothing more. As such, while Appellant consented to both a search and any attendant seizures, his pleas to investigators to leave the computer revoked his consent to this particular seizure, but not to the search.
C.
Appellant’s attempt, pursuant to Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), to pin evidence of consent revocation on his wife’s objection to the computer’s seizure fails because Randolph is inapplicable to this case. Randolph stands for the narrow proposition that “a *9 warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident.” Id. at 120, 126 S.Ct. 1515. Randolph would not permit a non-accused co-resident to supersede the wishes of the accused co-resident because, after all, Fourth Amendment rights “are personal rights which, like some other constitutional rights, may not be vicariously asserted.” Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).
D.
As soon as Appellant revoked his consent to the seizure, AFOSI agents informed him that “they would have to take the computer” as “a matter of routine.” Appellant acceded, but argues that this second so-called consent amounted to mere passive acquiescence to the color of authority in violation of Schneckloth v. Bustamonte. We agree, and find that under the totality of the circumstances, Appellant’s acquiescence did not constitute free and voluntary consent to the computer’s seizure after revocation of his initial consent to seize.
We determine voluntariness from all the circumstances. Schneckloth, 412 U.S. at 226-27, 93 S.Ct. 2041 (applying a totality-of-the-circumstances analysis and citing eases in which the Supreme Court has analyzed the facts for voluntariness on its own).
The Air Force court has laid out the following non-exhaustive factors with respect to the voluntariness of consent: (1) the degree to which the suspect’s liberty was restricted; (2) the presence of coercion or intimidation; (3) the suspect’s awareness of his right to refuse based on inferences of the suspect’s age, intelligence, and other factors; (4) the suspect’s mental state at the time; (5) the suspect’s consultation, or lack thereof, with counsel; and (6) the coercive effects of any prior violations of the suspect’s rights. United States v. Murphy, 36 M.J. 732, 734 (A.F.C.M.R.1992); United States v. Baker, 45 M.J. 538, 541 (A.F.Ct.Crim.App.1996) (adopting the test from Murphy). Based on this test, which we adopt, Appellant’s ultimate consent to the computer’s seizure lacks sufficient indicia of voluntariness.
Appellant clearly faced restrictions on his liberty. The military judge stated in her findings of fact that three individuals escorted Appellant from the AFOSI building to his home — the two AFOSI agents who conducted the initial interrogation and Appellant’s first sergeant, Master Sergeant Kemp. Another AFOSI agent joined, along with a chaplain. That Appellant was never technically under apprehension is not dispositive; no court that has analyzed this prong has considered apprehension determinative. See, e.g., United States v. Olivier-Becerril, 861 F.2d 424, 426 (5th Cir.1988) (noting that the defendant was not free to leave the inspection area at a Border Patrol checkpoint even though he was never technically in custody or under arrest). Authority figures, one of whom was Appellant’s first sergeant and thus responsible for unit discipline, not only helped conduct the search, but also escorted Appellant from the AFOSI building to his home. If Appellant faced no restrictions on his liberty, the escort would have been unnecessary.
The facts of the escort and the presence of several authority figures also created a coercive and intimidating atmosphere that stifled Appellant’s inclination to refuse consent to the computer’s seizure once the AFOSI agents informed Appellant that they had to take the computer as a matter of routine.
Furthermore, though Appellant was a twenty-six-year-old staff sergeant with nearly eight years of service, it is doubtful that he knew he could withdraw consent once given. The signed consent form does not explicitly state that the signer may withdraw consent; Article 31, UCMJ, warnings do not include an addendum clarifying that consent, once given, can be withdrawn; and none of the AFOSI agents testified that he advised Appellant that he could withdraw his consent at any time. What is more, when Appellant objected to the removal of the computer, the seizing agent stated that they “would have to take the computer” as a matter of routine *10 procedure. Regardless of his prior belief, Appellant likely believed that he could not refuse consent given the agent’s assurance that seizure was a routine requirement.
Finally, Appellant never consulted counsel throughout his questioning and the subsequent search. As such, since four of the six Murphy factors weigh against a finding of voluntary consent, we hold that Appellant’s ultimate consent to the seizure of the computer was not a valid consent, but rather mere acquiescence to the color of authority.
E.
Notwithstanding the validity of the seizure, the military judge did not err when she denied Appellant’s motion to suppress because, as she found, the evidence would have been inevitably discovered pursuant to a validly executed warrant.
The doctrine of inevitable discovery creates an exception to the exclusionary rule allowing admission of evidence that, although obtained improperly, would have been obtained by another lawful means. Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). M.R.E. 311(b)(2) embodies this exception, stating that “[ejvidence that was obtained as a result of an unlawful search or seizure may be used when the evidence would have been obtained even if such unlawful search or seizure had not been made.” This Court explained the doctrine in United States v. Kozak, 12 M.J. 389, 394 (C.M.A.1982) and, more recently, in United States v. Owens, 51 M.J. 204 (C.A.A.F.1999), where this Court upheld the legality of a warrantless search of the appellant’s car and seizure of stolen stereo equipment because overwhelming probable cause and routine police procedure made discovery of the evidence inevitable. Id. at 210-11.
In this case, the images of child pornography on Appellant’s computer hard drive would similarly have inevitably been discovered. As the military judge correctly concluded, had Appellant not ultimately consented to the seizure of the computer, the AFOSI investigators would have sought and obtained a search authorization based on probable cause. After all, during his interrogation, Appellant admitted to a sexual relationship with a young girl with whom he communicated mostly via e-mail and instant messenger. This alone encouraged investigators to focus on the computer as a source of evidence and created sufficient probable cause to allow AFOSI to obtain an authorization to search for, and seize e-mails and messages between Appellant and TND. Though the authorization would have been limited to e-mails and messages, one of the AFOSI investigators testified that the forensic software employed would have skimmed the computer’s hard drive, recovering all saved data. As the military judge concluded, investigators would have had to sift through all the captured data to find relevant e-mail traffic. As such, the files containing child pornography would have been inevitably discovered through this valid search. It should also be noted that although we have ultimately concluded that the initial consent to seize had been terminated as a matter of law, the fact that the law enforcement officers proceeded on the belief that they had consent underscores that this is not a case involving a deliberate intent to evade the warrant requirement.
IV.
We therefore find no error in the military judge’s denial of Appellant’s motion to suppress and affirm the decision of the United States Air Force Court of Criminal Appeals.