**UNITED STATES**

v.

**Senior Airman Edwin K. SANDERS, United States Air Force.**

**ACM 36707.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 21 Aug. 2005.

26 March 2008.

Appellate Counsel for the Appellant: Captain Christopher L. Ferretti and Philip D. Cave (civilian counsel).

Appellate Counsel for the United States: Colonel Gerald R. Bruce, Major Matthew S. Ward, and Captain Jamie L. Mendelson.

Before SCHOLZ, JACOBSON, and THOMPSON, Appellate Military Judges.

OPINION OF THE COURT

JACOBSON, Senior Judge:

Contrary to his pleas, the appellant was found guilty of knowingly possessing a computer hard drive that contained images of child pornography, in violation of Article 134, UCMJ, 10 U.S.C. § 934. A military judge sitting alone as a general court-martial sentenced the appellant to a dishonorable discharge, confinement for 2 years, and reduction to E-1. The convening authority approved the findings and only so much of the sentence as called for a bad-conduct discharge, confinement for 18 months, and reduction to E-1.

## Background

The appellant was assigned to Royal Air Force (RAF) Alconbury, England prior to his reassignment to Fort Meade, Maryland in 2003. While in England, the appellant and his family lived in government quarters. After arriving at Fort Meade, the appellant moved into government quarters at that installation. Several months after the appellant arrived at Fort Meade, the local Air Force Office of Special Investigations (AFOSI) was told that suspected child pornography had been found by workers who were cleaning the appellant's former government quarters in England. Upon receiving this information, the AFOSI opened an investigation on the appellant. The investigators attempted to obtain authorization to search the appellant's Fort Meade government quarters from the base magistrate, but their request was denied for lack of probable cause. The investigators then brought the appellant in for questioning. The appellant agreed to answer questions after he was read his rights pursuant to Article 31, UCMJ, 10 U.S.C. § 831. A discussion of child pornography ensued, during which the appellant admitted that if the investigators were to search his home computer they would "probably" find child pornography. After this admission, the appellant was asked whether he would consent to a search of his home and computer. He unequivocally refused and asked to speak with an attorney. No written statement was accomplished, and the interview was terminated. The AFOSI investigators then contacted the appellant's First Sergeant and told him to keep the appellant with him until he received further instructions. The appellant accompanied the First Sergeant while the latter presented a briefing to new airmen. After the briefing, the pair went to lunch and then back to their unit where the First Sergeant received a call from the AFOSI telling him the appellant was free to go. The appellant was in the care of the First Sergeant for approximately one to two hours.

The AFOSI investigators had not been idle during this period. They first called the military magistrate with the hope of obtaining a search authorization based on the appellant's admission during the interview. The magistrate, however, was not at his desk, so they left a message. The investigators then drove to the appellant's home where his wife greeted them. They told her about the child pornography allegations against her husband and that they had spoken to him about them. They did not lie to her, but they did not tell her everything that had transpired with her husband. Most significantly, they did not tell her that her husband had refused to give his consent to search. Mrs. Sanders told the agents that she had common access to the computer along with her husband and that they would not find any child pornography on it. She then signed a consent form which allowed them to seize and search the family computer. She escorted the investigators to the room in which the computer was located and watched as they disconnected the computer and seized it. The agents placed the computer into the trunk of their car and departed.

Soon after leaving the appellant's home, the investigators received a return call from the military magistrate. They informed him of the appellant's statements during the interview regarding the probability of child pornography being present on his home computer. The magistrate then verbally authorized a probable cause search and seizure of the computer and its associated media and followed up his oral authorization with written authorization the next day. No incriminating evidence was observed on the computer until it was analyzed by a government forensics laboratory, an event that occurred well after the oral and written search authorizations were obtained. When the computer was finally analyzed, 13 movie files and over 550 image files containing child pornography were found on the hard drive. At trial, the appellant made a timely but unsuccessful motion to suppress this evidence.

## Reasonableness of the Search and Seizure of the Appellant's Computer

The appellant argues the military judge erred in failing to suppress the search and seizure of the appellant's computer. We review the military judge's ruling for an abuse of discretion, analyzing his findings of fact under a clearly erroneous standard and his

conclusions of law de novo. *United States v. Wallace*, 66 M.J. 5 (C.A.A.F.2008).

The appellant relies on the Supreme Court's decision in *Georgia v. Randolph*, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006) to support his argument that the evidence obtained via the government's warrantless search and seizure of his home computer should have been inadmissible at trial because the search was unreasonable under the circumstances. In *Randolph*, the Supreme Court held that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Id.* at 120, 126 S.Ct. 1515. The government, advocating a narrow interpretation of the *Randolph* decision, focuses on the "physically present" language, arguing that since the appellant in the case sub judice was not at home when the investigators came to seek permission to search, *Randolph* by its plain language does not apply. Therefore, argues the government, we should rely on the Court's earlier decisions in *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) and *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) both of which generally held that evidence obtained pursuant to consent to search from one cohabitant was admissible against the other cohabitant.

The government's narrow and literal interpretation of *Randolph* is not unreasonable, drawing its initial support from Justice Souter's explanation that his majority opinion was "drawing a fine line," and explaining that "if a potential defendant with self-interest in objecting *is in fact at the door and objects,* the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out."

*Randolph,* 547 U.S. at 121, 126 S.Ct. 1515 (emphasis added). Thus, the majority preserved the efficacy of *Matlock* and *Rodriguez* while adding to the jurisprudence of Fourth Amendment reasonableness analysis in consent search cases. Several courts have embraced this narrow interpretation of *Randolph*.[1]

The appellant, on the other hand, urges us to adopt a broader interpretation of *Randolph*. The broader view is supported, according to some lower courts and commentators,[2] by the Supreme Court's focus on "widely shared social expectations"[3] as they pertain to the reasonableness of a consent search, and by similar language found in the majority opinion. The language from *Randolph* most closely applicable to the appellant's situation is Justice Souter's further clarification of the "fine line" his opinion was drawing:

> This is the line we draw, and we think the formalism is justified. *So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection,* there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it.

*Randolph,* 547 U.S. at 121–22, 126 S.Ct. 1515. (emphasis added)

In the case at bar there is evidence the appellant was not simply a "potentially objecting tenant," but a tenant who had unequivocally objected to a search of his residence. Knowing this, the investigators took steps to keep him from returning home and immediately went to the residence to obtain consent to search from the appellant's wife,

1. *See, e.g., United States v. Hudspeth*, 518 F.3d 954 (8th Cir.2008); *United States v. Groves*, No. 3:04–CR–76, 2007 WL 171916, 2007 U.S. Dist. LEXIS 3518 (N.D.Ind. Jan. 17, 2007); *United States v. Reed*, No. 3:06–CR–75 RM, 2006 WL 2252515, 2006 U.S. Dist. LEXIS 57666 (N.D.Ind. Aug. 3, 2006).

2. *See, e.g., United States v. Henderson*, No. 04 CR 697, 2006 WL 3469538, 2006 U.S. Dist. LEXIS 88404 (N.D.Ill. Nov. 29, 2006); Renee E. Williams, Note, *Third Party Consent Searches After Georgia v. Randolph: Dueling Approaches to the Dueling Roommates*, 87 B.U.L.Rev. 937 (2007).

3. *Randolph,* 547 U.S. at 111, 126 S.Ct. 1515.

deliberately keeping her in the dark regarding her husband's objections. If ever a case called for the "broad" interpretation of *Randolph*, this may be the one, based on the disturbing actions of the government investigators.

Nonetheless, we specifically decline to decide the case on the basis of *Randolph*. We find, as discussed below, that even without the government's questionable method of obtaining Mrs. Sanders' consent, the evidence leading to the appellant's conviction would have been legally seized pursuant to the military magistrate's search authorization. We therefore prefer to rest our decision on the settled principles of the inevitable discovery doctrine while the Circuit Courts of Appeals and, inevitably, the Supreme Court continue to struggle with the ramifications of *Randolph*.[4] We simply include this brief analysis of *Randolph* to emphasize our concern with the tactics used by government investigators to obtain search consent from the appellant's wife—tactics which were an unnecessary alternative to simply securing the potential evidence and awaiting a return call from the military magistrate.

### Inevitable Discovery

 "Evidence that was obtained as a result of an unlawful search or seizure may be used when the evidence would have been obtained even if such unlawful search or seizure had not been made." Mil. R. Evid. 311(b)(2). This codification of the "inevitable discovery rule" was incorporated into the Military Rules of Evidence in 1986. According to the Drafter's Analysis of the rule, it was added to incorporate the inevitable discovery exception to the exclusionary rule articulated by the Supreme Court in *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Drafter's Analysis, *Manual for Courts–Martial, United States (MCM)*, A22–17 (2005 ed.). The inevitable discovery doctrine creates an exception to the exclusionary rule allowing admission of evidence that, although obtained improperly, would have been obtained by another lawful

means. *Nix*, 467 U.S. at 444, 104 S.Ct. 2501. For this exception to the exclusionary rule to apply, our superior court has required that the prosecution must establish, by a preponderance of the evidence, that "when the illegality occurred, the government agents possessed, or were actively pursuing, evidence or leads that would have inevitably led to the discovery of the evidence and that the evidence would inevitably have been discovered in a lawful manner had not the illegality occurred." *United States v. Kozak*, 12 M.J. 389, 394 (C.M.A.1982) (citations omitted). The efficacy of the inevitable discovery doctrine was recently affirmed by our superior court in *Wallace*, 66 M.J. 5, under a set of facts similar to the case sub judice.

 After taking evidence and hearing argument on the suppression motion, the military judge made findings of fact and conclusions of law that included the subject of inevitable discovery, saying:

> After leaving the Sanders' home, SA Collins received a return call from the magistrate. She told him about the accused's statements regarding the probability of child pornography being on his home computer, and the magistrate orally authorized search and seizure of the computer and associated media. He directed her to reduce the information to writing the next day.

> SA Collins did not misrepresent the information she provided in support of the search authorization. A preponderance of the evidence shows that the accused told agents that he probably had images of child pornography on his home computer. This new information provided the magistrate sufficient probable cause to authorize a search and seizure of the computer and associated media.

> Therefore, even if the consent was invalid or revoked, the evidence would have been inevitably discovered.

We find the military judge's findings of fact to be well-grounded in the evidence and not clearly erroneous, and adopt them as our

---

4. In taking this approach, we are mindful of the age-old axiom of "bad facts make bad law," *See, e.g., United States v. Lee*, 25 M.J. 457 (C.M.A. 1988) (Cox, J., concurring in part and dissenting in part), and prefer to decide this case in the narrowest, most straightforward method possible.

own. We agree with the military judge's conclusion that a preponderance of the evidence shows the evidence obtained pursuant to the seizure and search of the appellant's computer would have been inevitably discovered even if Mrs. Sanders' consent was invalid. We therefore hold the military judge did not abuse his discretion by admitting the evidence obtained as a result of the seizure and subsequent search of the appellant's computer.[5]

We have examined the appellant's remaining assignments of error, submitted pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982) and find them to be without merit. *United States v. Matias,* 25 M.J. 356, 363 (C.M.A.1987).

*Conclusion*

The findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Reed,* 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings and sentence are

AFFIRMED.

**5.** We believe this conclusion is consistent with our superior court's majority opinion in *Wallace,* as well as the concerns set forth in Judge Baker's concurrence. In *Wallace,* a search authorization was neither sought nor obtained. In the case at bar, investigators actively sought a search authorization prior to the search and actually received the requested authorization, albeit after the computer had been seized. We believe the actions of the investigators and the magistrate "bear the indices of inevitability of discovery found in cases such as *Nix v. Williams." Wallace,* 66 M.J. 5 (C.A.A.F.2008) (Baker, J., concurring) (citation omitted).