EFFRON, Chief Judge
(concurring in the result):
I agree with that portion of Judge Erd-mann’s separate opinion highlighting the distinctions between the present case and the guidance of Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), and United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). See 67 M.J. at 396-98 (Erdmann, J., concurring in the result). In that context, I have reservations about the majority opinion’s attempt to define the Randolph-Matlock relationship, see 67 M.J. at 392-94, particularly in view of the uncertain contours of “widely shared social expectations” and “immediate chai-lenge[s]” under Randolph, 547 U.S. at 111, 113, 126 S.Ct. 1515. Instead, I would resolve the present appeal under the established principles of inevitable discovery.
As a general matter, “[ejvidence obtained as a result of an unlawful search or seizure made by a person acting in a governmental capacity is inadmissible against the accused....” Military Rule of Evidence (M.R.E.) 311(a). Among the exceptions to this general rule, the inevitable discovery doctrine provides that evidence from an otherwise unlawful search or seizure “may be used when the evidence would have been obtained even if such unlawful search or seizure had not been made.” M.R.E. 311(b)(2); see Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); United States v. Wallace, 66 M.J. 5, 10 (2008); Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence 311(b)(2) app. 22 at A22-17 (2008 ed.). In applying the inevitable discovery doctrine, we bear in mind that it is an exception that must be interpreted narrowly so that it does not subsume the general prohibition on the use of evidence obtained from unlawful searches. See 6 Wayne R. LaFave, Search and Seizure, § 11.4(a) (4th ed.2004). Assuming that the search of Appellant’s home was unlawful, see 67 M.J. at 396, 397-98 (Erdmann, J., concurring in the result), the present case falls well within the narrow confines of the inevitable discovery exception.
To demonstrate inevitable discovery, the prosecution must establish by a preponderance of the evidence that “when the illegality occurred, the government agents possessed, or were actively pursuing, evidence or leads that would have inevitably led to the discovery of the evidence and that the evidence would inevitably have been discovered in a lawful manner had not the illegality occurred.” United States v. Kozak, 12 M.J. 389, 394 (C.M.A.1982). Alternatively, a military judge may deny a defense suppression motion under the inevitable discovery doc *395 trine if assured that “the routine procedures of a law enforcement agency would inevitably find the same evidence, ... even in the absence of a prior or parallel investigation.” United States v. Owens, 51 M.J. 204, 210-11 (C.A.A.F.1999).
In the present case, the Government established that at the time of the alleged unlawful search, law enforcement officers possessed evidence that would have inevitably led to the discovery of the evidence pursuant to a valid probable cause search under M.R.E. 315(a). Prior to searching the Weston home under the now-disputed consent provided by Appellant’s wife, law enforcement officials possessed the following information, more than sufficient to establish probable cause, that would inevitably have led to discovery of the evidence at issue: (1) Staff Sergeant (SSgt) ME — the victim of Appellant’s concealed photography — reported to the military police the highly unusual fact that in the shared restroom attached to the office she occupied with Appellant, she had located a micro-camera hidden inside an electric razor; (2) based upon her personal knowledge of Appellant, she identified the razor with the concealed camera as Appellant’s property and presented it to the military police; (3) upon presentation of the razor and concealed camera, SSgt ME informed agents in the Criminal Investigation Division (CID) that Appellant had “an extensive knowledge of computers” and that she had seen similar surveillance cameras in his home on prior occasions; (4) SSgt ME told the military police that after discovering the concealed camera, she contacted Appellant’s wife, warned his wife of her suspicions, and was told by his wife that Appellant had locked himself in the home computer room for approximately one hour after work that day; (6) law enforcement officials then determined that in view of Appellant’s extensive knowledge of computers, they needed “to get to his computer as soon as possible”; (7) a law enforcement officer stationed at the Weston residence met Appellant and his wife outside their home and they accompanied the officer to the CID office; (8) at the CID office, Mrs. Weston presented the officers with two items — a working electric razor and an adaptor used to download images taken by the micro-camera — in effort to show that Appellant must have accidentally taken the micro-camera razor to work instead of the operating razor.
This evidence, which was presented to the military judge in the course of the suppression motion, demonstrated that law enforcement authorities had ample probable cause to search and seize Appellant’s home computer — particularly as it was more likely that he would have viewed any images on his home computer rather than on the routinely-monitored government computer he used at work. As we noted in United States v. Leedy, 65 M.J. 208, 213 (C.A.A.F.2007), probable cause “requires more than bare suspicion, but something less than a preponderance of the evidence.” The evidence available to the law enforcement officials readily met that standard and provided probable cause to believe that Appellant used an electric razor to hide a micro-camera in the restroom that he shared with SSgt ME; that the micro-camera was used to take pictures of SSgt ME during her private use of the bathroom; that Appellant used an adaptor to download images from the hidden micro-camera; that he brought the adaptor to his home; and that he used the adaptor and his home computer to view images of SSgt ME during her private use of the bathroom. Combined, these facts “lead one to believe that it [was] more probable than not that contraband [would] be present” in Appellant’s marital home. Leedy, 65 M.J. at 213.
In light of this information, the evidence presented by the Government at trial established that the military police possessed knowledge that would have led to a lawful search of the Weston home in compliance with routine police practices. See Owens, 51 M.J. at 210-11; Kozak, 12 M.J. at 394.
Appellant suggests that discovery was not inevitable because the evidence could have been intentionally or inadvertently destroyed during the period in which the law enforcement officials would have sought issuance of a search authorization. The speculative possibility that a suspect might have destroyed *396 evidence, however, does not preclude application of the inevitable discovery doctrine in view of the fact that law enforcement officials may institute a temporary, warrantless seizure of the premises in such circumstances. Illinois v. McArthur, 531 U.S. 326, 331-34, 337, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) (finding permissible temporary seizures of property supported by probable cause and designed to prevent the loss of evidence while police obtain search authorization).
In view of these considerations, I would affirm on the basis that the record establishes facts under which the evidence at issue was admissible pursuant to the inevitable discovery doctrine.