*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

## UNITED STATES
Appellee

**v.**

## Christopher J. NELSON, Lance Corporal
United States Marine Corps, Appellant

**No. 21-0304**
Crim. App. No. 202000108

Argued February 8, 2022—Decided April 25, 2022

Military Judges: Keaton H. Harrell and Kyle G. Phillips

For Appellant: *Commander Jonathan Riches*, JAGC, USNR (argued).

For Appellee: *Lieutenant R. Blake Royall*, JAGC, USN (argued); *Lieutenant Colonel Christopher G. Blosser*, USMC, *Lieutenant Gregory A. Rustico*, JAGC, USN, and *Brian K. Keller*, Esq. (on brief); *Lieutenant Commander Jeffrey S. Marden,* JAGC, USN.

Chief Judge OHLSON delivered the opinion of the Court, in which Judge SPARKS, Judge MAGGS, Judge HARDY, and Senior Judge RYAN joined.

———————

Chief Judge OHLSON delivered the opinion of the Court.

We granted review to determine whether the military judge erred when he concluded that Appellant voluntarily provided his cell phone's passcode to law enforcement. We hold that under the totality of the circumstances, Appellant did voluntarily provide his passcode and thus the military judge did not abuse his discretion in denying a defense motion to suppress incriminating evidence derived from Appellant's cell phone. We therefore affirm the judgment of the United States Navy-Marine Corps Court of Criminal Appeals (CCA).

## I. Background

Beginning in May 2015 and ending in May 2018, Appellant conspired with a fellow Marine and a civilian to distribute LSD and cocaine to Marines in Jacksonville, North Carolina, and aboard Marine Corps Base Camp Lejeune.

Appellant distributed these drugs on several occasions. During this three-year period, Appellant also personally used LSD, cocaine, and psilocybin mushrooms on multiple occasions. In December 2016, Appellant entered into a separate conspiracy with a different Marine to purchase approximately three grams of cocaine from a civilian for the purpose of distribution aboard Camp Lejeune. Appellant then did, in fact, introduce and distribute this cocaine.

In March 2018, Appellant's drug use came to light while the United States Marine Corps Criminal Investigation Division (CID) was conducting a separate, unrelated investigation. A search of Appellant's cell phone—under the circumstances outlined directly below—provided CID with investigative leads that resulted in Appellant being charged with multiple offenses.

In the course of ruling on a defense motion to suppress this evidence, the military judge made the following findings of fact:

On April 30, 2018, a senior staff noncommissioned officer escorted Appellant to the CID building for questioning by Investigator Hotel.[1] At 9:07 a.m., Investigator Hotel advised Appellant of "a hybrid of Article 31(b)"[2] "and *Miranda*"[3] rights and Appellant waived these rights. Investigator Hotel "appear[ed] calm during the interrogation and the tone was conversational."

As reflected below, during the course of the interrogation the investigator asked Appellant five times if he would consent to a search of his cell phone.

At 9:59 a.m., Investigator Hotel asked Appellant if he was willing to turn over his phone. Appellant responded, "I'd rather not."

---

[1] Because the lower court and Appellant used this pseudonym for the CID investigator, we will also use this name for consistency and clarity.

[2] Article 31(b), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 831(b) (2012).

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

At 10:23 a.m., after Appellant admitted to snorting cocaine, Investigator Hotel stated, "I'd like to do a search of your phone." The military judge's findings of fact do not indicate whether Appellant responded or reacted to this statement by the investigator.

Sometime after 10:23 a.m., Investigator Hotel stated that he would seek to obtain from the commander a search authorization for Appellant's phone. Appellant responded, "I guess at that point I'd have no choice."

At 10:31 a.m., Investigator Hotel asked again if Appellant would consent to a search of his phone. Appellant replied, "I'd be willing to let a lawyer look at my messages."

At 10:36 a.m., Investigator Hotel stated, "You know what is on the phone." Appellant refused to consent to a search, stating that he would not do so "without knowing whether I'd be incriminating myself."

Investigator Hotel terminated the interview shortly thereafter, seized Appellant's phone, and fingerprinted Appellant before releasing him to his unit.

The next morning, May 1, Investigator Hotel obtained a search authorization for the contents of Appellant's cell phone. The commanding officer determined that there was "probable cause" to search "[d]igital pictures/images, media, telephone call logs, [and/or] various forms of text message communication" on Appellant's phone.

At 1:54 p.m., Investigator Hotel met Appellant at the Battalion Headquarters Building. Although Investigator Hotel did not re-advise Appellant of his Article 31, UCMJ, or *Miranda* rights, he did advise Appellant that the commanding officer found probable cause to search Appellant's phone. Investigator Hotel then placed the phone in front of Appellant. Investigator Hotel next asked Appellant if he was willing to unlock his cell phone. Appellant responded: "I guess I don't have a choice." Immediately after this statement and without waiting for a response from Investigator Hotel, Appellant entered his passcode. After unlocking the phone, Appellant answered additional questions about the security features of the phone's applications. The meeting "lasted maybe three

minutes." The search revealed "numerous inculpatory messages pertaining to the wrongful use, introduction, and distribution of various controlled substances."

At his court-martial, Appellant filed a motion to suppress evidence obtained as a result of the search of his cell phone. In a thorough order, the military judge denied the motion. Of relevance to the granted issue, the military judge reasoned that Appellant's entry of the passcode was voluntary "[b]ased on the totality of the circumstances" as reflected below:

(1) Appellant waived his *Miranda*/Article 31, UCMJ, rights on April 30 and "did not unambiguously invoke" these rights;

(2) Appellant demonstrated that he understood these rights and "answered other questions related to" his cell phone;

(3) Appellant was twenty-five years old and "approximately one month from leaving active duty after a four[-]year enlistment";

(4) Appellant was "articulate[,] with the ability to communicate clearly";

(5) The interrogation atmosphere was not " 'laced with coercion or intimidation' " (citation omitted), and Investigator Hotel's tone was polite;

(6) When Appellant said that he had no choice, Appellant did not wait for a response from Investigator Hotel before entering the passcode;

(7) The interrogation was brief, "lasting only minutes";

(8) Investigator Hotel was the only law enforcement agent present; and

(9) "There were no threats, physical abuse, or coercion" on May 1.

Following this ruling, Appellant entered into a pretrial agreement with the convening authority. One of the specially negotiated provisions of this agreement "preserv[ed] the right to review or appeal . . . any adverse determination on the motion to suppress evidence."

Pursuant to this conditional plea, a military judge, sitting alone as a general court-martial, convicted Appellant of two specifications of conspiracy to wrongfully distribute a controlled substance, one specification of conspiracy to wrongfully introduce a controlled substance with intent to distribute, two specifications of wrongful distribution of a controlled substance, one specification of wrongful introduction of a controlled substance with intent to distribute, and three specifications of wrongful use of controlled substances, in violation of Articles 81 and 112a, UCMJ, 10 U.S.C. §§ 881, 912a (2012).[4] The military judge sentenced Appellant to a bad-conduct discharge, confinement for twenty-four months, and a reduction to E-1. Applying the pretrial agreement, the convening authority approved the reduction to E-1 and the bad-conduct discharge, but suspended all confinement in excess of eighteen months. The military judge entered judgment reflecting these findings and this modified sentence.

Pursuant to the terms of the conditional plea, Appellant argued before the CCA that the military judge erred in concluding that he voluntarily entered his cell phone's passcode. *United States v. Nelson*, No. NMCCA 202000108, 2021 CCA LEXIS 215, at *2, 2021 WL 1750886, at *1 (N-M. Ct. Crim. App. May 4, 2021) (unpublished). Despite Appellant's "no choice" statement, the lower court "agree[d] with the military judge's conclusion that, based on the totality of the circumstances, Appellant's statements were voluntary." *Id.* at *8–9, 2021 WL 1750886, at *3–4. As a result, the CCA affirmed the findings and sentence. *Id.* at *15, 2021 WL 1750886, at *6.

We granted review on the following issue:

> Did the military judge and the court below err in finding that Appellant voluntarily provided his smart phone passcode to law enforcement when the law enforcement official conducting the interrogation asserted that he possessed a search authorization for the phone and Appellant only provided his passcode because Appellant believed he had "no choice?"

---

[4] After announcement of the findings, the military judge conditionally dismissed one of the conspiracy specifications of wrongful distribution as an unreasonable multiplication of charges.

*United States v. Nelson*, 81 M.J. 468 (C.A.A.F. 2021) (order granting review).

## II. Standard of Review

"We review a military judge's ruling on a motion to suppress for an abuse of discretion and consider the evidence in the light most favorable to the party that prevailed at trial." *United States v. Mitchell*, 76 M.J. 413, 417 (C.A.A.F. 2017). "A military judge abuses his discretion if 'his findings of fact are clearly erroneous or his conclusions of law are incorrect.'" *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015) (quoting *United States v. Wicks*, 73 M.J. 93, 98 (C.A.A.F. 2014)). "The voluntariness of a confession is a question of law that this Court reviews de novo." *United States v. Lewis*, 78 M.J. 447, 453 (C.A.A.F. 2019).

## III. Applicable Law

"A servicemember's protection against compulsory self-incrimination is unparalleled in the civilian sector" because "[t]his fundamental right is protected by both the Fifth Amendment *and* Article 31, UCMJ." *United States v. Mapes*, 59 M.J. 60, 65 (C.A.A.F. 2003) (emphasis added). The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Similarly, Article 31(a), UCMJ, prohibits individuals subject to the UCMJ from "compel[ling] any person to incriminate himself or to answer any question the answer to which may tend to incriminate him." 10 U.S.C. § 831(a) (2012). Importantly, "Article 31, like the Fifth Amendment, focuses on *testimonial* compulsion." *United States v. Williams*, 23 M.J. 362, 366 (C.M.A. 1987) (emphasis added).[5]

---

[5] "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542 U.S. 177, 189 (2004). Because we decide that there was no compulsion in this case, we need not decide whether Appellant's act of unlocking his cell phone was incriminating and testimonial. The Government declined to argue on appeal to this Court that Appellant's act of unlocking the cell phone was not incriminating or testimonial, and this Court has not previously determined under what circumstances such an act is both incriminating and testimonial. *See United States v. Mitchell*, 76 M.J. 413,

"Voluntariness turns on whether an accused's 'will has been overborne.'" *Lewis*, 78 M.J. at 453 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). This Court examines "the totality of all the surrounding circumstances" by "appl[ying] the two-part test from *Schneckloth*, 412 U.S. 218, looking to both the personal characteristics of the accused as well as the circumstances of the interrogation." *Lewis*, 78 M.J. at 453 (citation omitted) (internal quotation marks omitted). Regarding personal characteristics, "[s]ome of the factors taken into account have included the youth of the accused, his lack of education, or his low intelligence." *Id.* (internal quotation marks omitted) (quoting *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008)). Regarding the circumstances of the interrogation, "[s]ome of the factors taken into account have included . . . the lack of any advice to the accused of his

---

418–19 (C.A.A.F. 2017) (holding that delivery of the passcode was incriminating under the circumstances of the case but not deciding whether it was testimonial); *id.* at 421 (Ryan, J., dissenting) (expressing doubt that the accused's "physically entering his passcode constituted a 'testimonial' event"). Indeed, this is a novel and evolving question not only in this Court but in courts across the nation. *See* Marjorie A. Shields, Annotation, *Fifth Amendment Privilege Against Self-Incrimination as Applied to Compelled Disclosure of Password or Production of Otherwise Encrypted Electronically Stored Data*, 84 A.L.R. 6th 251 (2013 & Cum. Supp. 2022) (describing numerous cases from other jurisdictions).

In this case, we proceed directly to the issue of compulsion because the granted issue asks only whether the military judge erred in finding that Appellant voluntarily provided his cell phone passcode. But we note that, in other instances, counsel might first question whether a response from the accused is incriminating and testimonial because this inquiry might simplify the Fifth Amendment analysis. If what is requested is not testimonial, then the Fifth Amendment is not implicated. *See, e.g.*, *Pennsylvania v. Muniz*, 496 U.S. 582, 590–92 (1990) (asking questions that revealed slurred speech and lack of muscular coordination was not testimonial and did not implicate the Fifth Amendment); *United States v. Dionisio*, 410 U.S. 1, 7 (1973) (same for providing voice exemplars); *Gilbert v. California*, 388 U.S. 263, 266–67 (1967) (same for providing handwriting exemplars). Similarly, if what is requested is not incriminating, then the Fifth Amendment also is not implicated. *See, e.g.*, *Hiibel*, 542 U.S. at 189–91 (asking the accused to disclose his name did not implicate the Fifth Amendment under the circumstances because the disclosure presented no reasonable danger of incrimination).

7

constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." *Id.* (internal quotation marks omitted) (quoting *Freeman*, 65 M.J. at 453). The Supreme Court has not "required the prosecution to prove as part of its initial burden that the defendant knew he had a right to refuse to answer the questions that were put" to him. *Schneckloth*, 412 U.S. at 226–27.

## IV. Discussion

We conclude that the military judge did not err in ruling that Appellant voluntarily entered his cell phone passcode. As an initial matter, the parties and lower court agree that the military judge engaged in proper and necessary factfinding and that none of the relevant factual findings is clearly erroneous. Moreover, the factors that the military judge considered in his "totality of the circumstances" analysis were both appropriate and consistent with our case law. Therefore, although we engage in a de novo review of the voluntariness issue, our analysis mirrors that of the military judge.

First, Appellant was not somehow peculiarly susceptible to coercion. To the contrary, he was twenty-five years old and had been a Marine for nearly four years.[6] As the military

---

[6] Appellant argues that *United States v. Wallace*, 66 M.J. 5 (C.A.A.F. 2008), demonstrates that his age and experience do not weigh in favor of a finding of voluntariness. In *Wallace*, this Court did state that "it is doubtful" that "a twenty-six-year-old staff sergeant with nearly eight years of service" would know "he could withdraw consent once given." *Id.* at 9. However, *Wallace* is distinguishable from the instant case on two essential grounds. First, in *Wallace* we noted that the "coercive and intimidating atmosphere" to which the appellant was subjected "stifled [a]ppellant's inclination to refuse consent to the computer's seizure once the [Air Force Office of Special Investigations (AFOSI)] agents [mis]informed [a]ppellant that they had to take the computer as a matter of routine." *Id.* In the case before us there was no "coercive and intimidating atmosphere" that "stifled" Appellant from asserting his rights. And second, in *Wallace* an AFOSI investigator actively misled the appellant about his ability to assert his rights by falsely claiming that they were required to take the appellant's computer "as a matter of routine procedure." *Id.* at 9–10. Nothing similar happened in the instant case. Therefore, the analysis in *Wallace* is not applicable here.

judge found, Appellant also was "articulate with the ability to communicate clearly."

Second, during the initial interview, not only did Appellant "technically" waive his *Miranda*/Article 31, UCMJ, rights, he did so forthrightly and unambiguously and demonstrated his willingness to answer questions. Moreover, he repeatedly demonstrated his recognition that he could decline to provide the passcode to his phone.

Third, although Appellant cites the fact that he was asked five times to provide the investigator with the passcode in the April 30 interview, Appellant does not provide any basis for this Court to conclude that this initial interview was coercive. We specifically note that Appellant did not invoke his right to counsel and did not seek to depart from the interview. Thus, it was permissible for Investigator Hotel to ask Appellant five times whether he was willing to provide the passcode.

Fourth, during the May 1 interview, Investigator Hotel's tone and demeanor remained professional at all times and the encounter "last[ed] only minutes." The investigator did not engage in threats, abuse, or coercion in order to get Appellant to enter the passcode. Furthermore, the investigator was not obligated to read Appellant his rights again.[7]

Fifth, when Appellant stated that he had "no choice" but to enter the passcode, he did not wait for a response by Investigator Hotel before unlocking his phone. Moreover, the investigator in this case was under no obligation to correct Appellant's misimpression. *See United States v. Faux*, 828 F.3d 130, 138 (2d Cir. 2016) ("the officers had no duty to correct [defendant's] misimpression"); *People v. Smith*, 150 P.3d 1224, 1240

---

[7] "The general rule is that if warnings are given properly the first time and there is a continuance of the interrogation, separate warnings are not needed." *United States v. Jefferson*, 44 M.J. 312, 322 (C.A.A.F. 1996). This principle holds true even if the interrogation is continued one day later. *United States v. White*, 17 C.M.A. 211, 217–18, 38 C.M.R. 9, 19–21 (1967); *see also United States v. Clay*, 408 F.3d 214, 222 (5th Cir. 2005) (approving the failure to re-advise a defendant of *Miranda* warnings after two days where there was no evidence that he "no longer understood those warnings or did not appreciate their applicability to" the later interrogation).

(Cal. 2007) (noting that the defendant did not cite any "authority for the proposition that a suspect who has received and understood the *Miranda* advisements cannot properly waive his Fifth Amendment rights [even] if he labors under any misapprehension of the mechanics of" those rights). Additionally, by informing Appellant that Investigator Hotel had obtained a search authorization, the investigator did not overbear Appellant's will. On the contrary, the investigator did, in fact, have a search authorization. *Cf. United States v. Biswell*, 406 U.S. 311, 315 (1972) (explaining that there is no Fourth Amendment violation when a householder "acquiesce[s]" to a search warrant because "there is lawful authority independent of the will of the householder who might, other things being equal, prefer no search at all").

In his brief, Appellant makes two main arguments. First, Appellant avers that his entry of the passcode was involuntary because he merely acquiesced to a claim of authority. However, we note that the Fourth Amendment consent cases that Appellant cites in support of his claim are not on point. For example, in *Bumper v. North Carolina* law enforcement never had a valid warrant, 391 U.S. 543, 548–50 (1968); in *United States v. McClain* this Court held that "[c]onsent obtained with [the] threat of [a] '*command directed*' urinalysis" is "[n]ot admissible," 31 M.J. 130, 133–34 (C.M.A. 1990) (emphasis added) (citing *United States v. White*, 27 M.J. 264, 265 (C.M.A. 1988)); and, as noted above, in *Wallace* there was "a coercive and intimidating atmosphere" coupled with a misrepresentation by law enforcement that their seizure of the appellant's computer was simply "a matter of routine procedure" which resulted in the appellant's "mere acquiescence to the color of authority" when he gave his consent to search, 66 M.J. at 9–10. But in the instant case, law enforcement had already obtained a valid search authorization, there was no threat of a command directed search, there was no coercive environment, and there were no misrepresentations made by law enforcement. Rather than relying solely on a coerced consent to search, law enforcement here searched Appellant's phone pursuant to a valid search authorization, to which he acquiesced by entering his passcode. *See Biswell*, 406 U.S. at 315 (stating that "acquiescence . . . pursuant to a warrant" is not "involuntary

consent"); *United States v. Vines*, 9 F.4th 500, 509 (7th Cir. 2021) (determining a statement that law enforcement would return with a warrant if an individual refused to consent did not "render[] the acquiescence involuntary").

Appellant next argues that his refusal to consent to a search of his phone five times "is direct evidence that he did not voluntarily provide his phone's passcode." Brief for Appellant at 19, *United States v. Nelson*, No. 21-0304 (C.A.A.F. Nov. 1, 2021). However, we are not persuaded that, standing alone, five refusals to consent to a search make a subsequent entry and provision of a passcode involuntary. Key to our analysis here is the military judge's factual findings that the investigator used a professional tone at all times and did not engage in threats, abuse, or coercion. Although the five refusals are a factor we have considered, we conclude that under the "totality of the circumstances" there is not a basis for us to conclude that Appellant's entry of his passcode was involuntary. Indeed, looking at the facts and the law as a whole, we conclude that the military judge did not abuse his discretion in denying Appellant's motion to suppress.

### V. Judgment

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.