**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Airman First Class SYDNEY S. CARPENTER**
**United States Air Force**

**ACM 38628**

**14 January 2016**

Sentence adjudged 15 March 2014 by GCM convened at Barksdale Air Force Base, Louisiana. Military Judge: Bradley A. Cleveland.

Approved Sentence: Bad-conduct discharge, confinement for 10 months, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Michael A. Schrama.

Appellate Counsel for the United States: Major Meredith L. Steer; Major Roberto Ramirez; and Gerald R. Bruce, Esquire.

Before

MITCHELL, TELLER, and MAYBERRY
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under Rule of Practice and Procedure 18.4.

MAYBERRY, Judge:

At a general court-martial composed of officer members, Appellant was convicted, contrary to his pleas, of possession of child pornography in violation of Article 134, UCMJ, 10 U.S.C. § 934. The court sentenced Appellant to a bad-conduct discharge, confinement for 10 months, hard labor without confinement for 2 months, restriction to Barksdale Air Force Base for 2 months, forfeiture of all pay and allowances, and reduction to E-1. The convening authority did not approve the hard labor without confinement or the restriction to base but approved the remainder of the sentence as adjudged.

On appeal, Appellant raised five assignments of error: (1) the military judge erred by admitting evidence found on Appellant's laptop, (2) the military judge erred in admitting Mil. R. Evid. 404(b) evidence of his civilian arrest for soliciting a minor, (3) the evidence was legally insufficient to support his conviction, (4) trial counsel's sentencing argument was improper and (5) the military judge erred in failing to give an impossibility instruction.[1] We disagree and affirm the finding and sentence.

*Background*

In May 2013, Detective M, a member of the Caddo Parish Sheriff's Office (who was also a member of the Internet Crimes Against Children Task Force) saw a posted advertisement on Craigslist.com soliciting sex but identifying no age restriction. The detective adopted the assumed identity of a 13-year-old female and responded to the posting. Over the next two days, the detective corresponded with "Syd," the poster of the Craigslist.com ad, who was later identified as Appellant. The two individuals exchanged phone numbers and subsequently communicated by text message. The tenor of the texts was overtly sexual and non-nude photographs were exchanged. A meeting was arranged for 10 May 2013 at a local mall. Additional texts were exchanged to identify the exact location for the meeting. The detective went to the planned meeting location, saw a male matching the description from the texts (Appellant), walked up behind him, called out the name "Syd," identified himself as a sheriff's deputy, and informed him that he was under arrest for computer-aided solicitation of a minor in violation of Louisiana law. At the time of his arrest, Appellant had a cell phone in his possession.

After Appellant was booked, the Sheriff's Office contacted Air Force Office of Special Investigations (AFOSI) at Barksdale Air Force Base (AFB). A joint investigation ensued. AFOSI Special Agent (SA) H sought search authority from the military magistrate for Appellant's dorm room to seize "electronic devices capable of sending emails and text messages." Together, SA H and Detective M went to Appellant's room and seized a laptop and a tablet. Both items were given to Detective M. Approximately 30 days later, Detective M performed a forensic preview of Appellant's laptop for evidence of the solicitation related emails. Finding none, he continued to review the files and folders and came across anime pornography.[2] Since this was not illegal in his jurisdiction, he contacted AFOSI, which told him they could not do anything with this type of evidence either. Undeterred, Detective M kept looking, this time using software specifically designed to locate known images of child pornography and found what he believed to be child pornography. Because Barksdale AFB has exclusive federal jurisdiction, he again called SA H, informed him of his most recent discovery, and ultimately returned the laptop and tablet to AFOSI.

---

[1] Appellant raises this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).
[2] Throughout this opinion, the term "anime" specifically refers to cartoon-type images or videos that depict what appear to be minors engaging in sexually explicit conduct or lascivious exhibition of the genitals or pubic area.

After the discovery of the anime and suspected child pornography, SA H again sought search authorization from the military magistrate, requesting to search Appellant's dorm room. This time, he specifically requested to "search and seize electronic media devices capable of storing child pornography or evidence thereof." The magistrate again authorized the search. Pursuant to this authorization, AFOSI seized additional items of digital media (e.g., subscriber identity module (SIM) cards meant for cellular phones, writable CD-Rs, and external hard drives). On 24 June, after AFOSI obtained custody of the laptop, SA H sought a third search authorization to search the laptop for child pornography or evidence thereof. In late June, AFOSI made a mirror image of the laptop originally seized in May and sent all of these items to the Defense Computer Forensics Laboratory (DCFL) for a forensic data extraction (FDE) analysis. The initial analysis identified over 200,000 images and videos. Of those, 99 images were identified as known child pornography. AFOSI requested a "deep dive" analysis of 24 images. Later, in December, AFOSI sent additional images to DCFL for "deep dive" analysis and requested additional information on items previously analyzed by DCFL.

Additional facts necessary to resolve the assigned errors are included below.

*Admission of Evidence from Laptop*

Appellant asserts the military judge abused his discretion in admitting evidence from the laptop because there was no authorization for the laptop to be searched. Trial defense counsel similarly challenged admission of this evidence in a motion to suppress pursuant to Mil. R. Evid. 311(a), primarily emphasizing the fact that Detective M's search of the computer exceeded the scope of the search authorization but also alleging the search authorization only allowed for seizure of items from Appellant's dorm room, not searching. This issue was thoroughly litigated at trial.

We review a military judge's decision to deny a motion to suppress under an abuse of discretion standard. In doing so, we "consider the evidence 'in the light most favorable to the' prevailing party." *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004) (quoting *United States v. Reister*, 44 M.J. 409, 413 (C.A.A.F. 1996)). We review the military judge's "factfinding under the clearly-erroneous standard and [his] conclusions of law under the *de novo* standard." *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995) (citations omitted). We will find an abuse of discretion only if the military judge's "findings of fact are clearly erroneous or his conclusions of law are incorrect." *Id.*

Appellant asserts that the authorization granted by the military magistrate (verbally on 10 May and in writing on 13 May) did not authorize anything other than a search of the dorm room and seizure of electronics capable of sending/receiving emails and texts. Consequently, any search activities by Detective M would have been unlawful. The written Air Force (AF) Form 1176, *Authority to Search and Seize*, clearly did not

contain a request to search any electronics – rather, it authorizes a search of "Building 4660 # 120, Barksdale AFB, LA" and seizure of "Electronic Devices capable of sending Emails and Text messages."[3] The accompanying affidavit also requested authority "to search and seize [Appellant's] dorm room" for such electronic devices.[4] SA H testified that those documents contained everything he discussed with the magistrate and acknowledged that nowhere on those documents was there a request to search any electronics. Detective M testified that the AF Form 1176 did not mention searching electronics. The magistrate testified that it was his intent that anything on the computer was "fair game," but he did not ever communicate that to SA H.

The military judge's written findings indicated that he found SA H and Detective M to be sincere, unbiased, and credible. The military judge's findings of fact further stated:

> In furtherance of the joint investigation, on 10 May 2013, AFOSI Special Agent (SA) [H] sought search authority from Col [PM], a military search authority on Barksdale AFB. The AF Form 1176 requested authority to seize "Electronic Devices capable of sending E-mails and Text messages." …Colonel [PM] issued an authority to search and seize [Appellant's dorm room] for electronic devices capable of sending emails and text messages.…Pursuant to the search authority SA [H] and Detective [M] conducted the search on 10 May 2013 and seized a Toshiba hard drive and a computer tablet…Based on the search authority, SA [H] (and Detective [M]) was permitted to search the items seized from [Appellant].

> The 10 May search authorization was particularly focused in its scope and permitted a search of any electronic items that were capable of sending emails and text messages. Emails, text messages, and photos attached to an email or text message, can be stored anywhere on a computer…and the investigators were permitted to search anywhere on the devices to recover the evidence they needed.

Appellant's position is that, while the military judge did provide a very detailed written ruling on the motion to suppress, he failed to analyze the issue of whether the search of the laptop was permissible. The Government appears to concede that the initial search was unlawful, citing to the fact that "appellant's laptop was searched by a civilian law enforcement agency not under the control of the Air Force." It does not further expound on this statement. The Government concludes its argument with "[t]here is

---

[3] Conversely, in a subsequent Air Force (AF) Form 1176 dated 24 June 2013, the military magistrate authorized a search of Appellant's "laptop computer hard drive and tablet computer" for seizure of "Child pornography and evidence thereof."

[4] In the supporting affidavit for the AF Form 1176 dated 24 June 2013, SA H requested authority "to search [Appellant's] laptop computer and tablet computer for child pornography or evidence thereof."

nothing in Appellant's argument or in the record of trial to suggest that the military judge's findings are 'clearly erroneous'." The Government's brief includes the portion of the trial judge's ruling addressing inevitable discovery, but the brief does not independently address any other aspect of the legality of the search and seizure.

The Government's assertion that Detective M's search was "not under the control of the Air Force" is contrary to the law. In *United States v. Daniels*, 60 M.J. 69, 71 (C.A.A.F. 2004), our superior court specifically examined the issue of private actors/government agents in the context of Fourth Amendment searches and held:

> [T]he question of whether a private actor performed as a government agent does not hinge on motivation, but rather "on the degree of the Government's participation in the private party's activities, a question that can only be resolved 'in light of all the circumstances.'" *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614-15, 103 L. Ed. 2d 639, 109 S. Ct. 1402 (1989) (internal citations omitted). To implicate the Fourth Amendment in this respect, there must be "clear indices of the Government's encouragement, endorsement, and participation" in the challenged search. *Id.* at 615-16.

In the case before us, all of the search authorizations were issued by the military magistrate. This was a joint investigation between Caddo Parish and the Air Force. This was a government search implicating the Fourth Amendment. As such, the Fourth Amendment[5] provides that "the right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." Mil. R. Evid. 315(b)(1) echoes that particularity requirement. We are satisfied that the intent of AFOSI was to request permission to "search" the electronic devices, rather than merely to "seize" them. We are similarly convinced that the military magistrate's intent was the same. A search that is conducted pursuant to a search authorization is presumptively reasonable. *United States v. Wicks*, 73 M.J. 93, 99 (C.A.A.F. 2014). The search authorization intended to grant AFOSI permission to search the contents of the electronic devices, and even if an error was committed in completing the form, at a minimum the good faith exception to the exclusionary rule applies. *See United States v. Carter*, 54 M.J. 414, 419 (C.A.A.F. 2001). We therefore find the military judge did not abuse his discretion in declining to suppress the evidence on this basis.

Having found the military judge's ruling that the search authorization included the authority to search the electronics seized from Appellant's room, we do not agree with the military judge's conclusion that the search did not exceed the scope of the warrant.

---

[5] U.S. CONST. amend. IV.

SA H sought search authorization for evidence of solicitation of a minor, specifically addressing the use of Craigslist.com and the exchange of text and email messages. SA H testified that he believed he could search the computer for any evidence of texts and emails between Appellant and the undercover officer. SA H had no knowledge of the exchange of photos, and therefore did not discuss that aspect of the communications between Appellant and the undercover officer with the magistrate. Detective M briefly looked, but did not find, any evidence of emails or texts or the Craigslist.com advertisement. He almost immediately shifted his attention to looking for photos. The magistrate was aware of the electronic communications between Appellant and the undercover officer stemming from an electronic solicitation by Appellant for sex. While it is reasonable to infer the search authorization allowed for efforts to seek evidence of those communications, it is not reasonable to infer that the magistrate authorized the search for evidence that he knew nothing about. Having found the military judge's ruling that the search did not exceed the scope of the authorization to be an abuse of discretion, we consider whether the evidence found on the laptop would have been inevitably discovered.[6]

The inevitable discovery doctrine "allows[s] admission of evidence that, although obtained improperly, would have been obtained by another lawful means." *United States v. Wallace*, 66 M.J. 5, 10 (C.A.A.F. 2008) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984)); *see also* Mil. R. Evid. 311(b)(2) (stating that "[e]vidence that was obtained as a result of an unlawful search or seizure may be used when the evidence would have been obtained even if such unlawful search or seizure had not been made"). When routine procedures of a law enforcement agency would have discovered the same evidence, the inevitable discovery rule applies even in the absence of a prior or parallel investigation. *United States v. Owens*, 51 M.J. 204, 210–11 (C.A.A.F. 1999). Mil. R. Evid. 315(f)(2) provides that "[p]robable cause to search exists when there is a reasonable belief that the person, property, or evidence sought is located in the place or in the person to be searched." "When a commander is asked to authorize a search, the question is 'whether, given all the circumstances set forth in the affidavit before him, . . . a fair probability' exists that the suspected evidence will be found in the place to be searched." *Owens*, 51 M.J. at 211 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

In the case before us, the military judge also conducted an inevitable discovery analysis. However, his analysis was premised on Detective M's search of the laptop being permissible and analyzed only the evidence discovered after Detective M shifted his focus from searching for evidence of the solicitation of a minor to searching for child pornography. Because a proper inevitable discovery analysis must exclude the taint

---

[6] Having determined that there was no authorization to search the computer seized from Appellant's dorm room, we do not address whether the search exceeded the scope or analyze the possible application of the plain view or good faith exceptions. For the same reason, we do not address the issue of whether or not the search authorization had expired by the time Detective M conducted the search activities.

resulting from any impermissible search activities conducted by Detective M, we find the military judge's ruling was an abuse of discretion.

The starting point of the inevitable discovery analysis must be the point in time after Detective M exceeded the scope of the search authorization and started looking for photos. Had SA H been fully apprised of the all of the details involved in the solicitation offense (which is the only basis for the search authorization at this point in time), to include the exchange of photographs, it is reasonable to believe that he would have included that information in the request for search authorization. Unlike the actual request and affidavit in the case before us and in accordance with this court's decision in *United States v. Osorio*, 66 M.J. 632, 637 (A.F.C.C.A. 2008), that request would have to be specific in scope, which in turn, would mandate specificity in the execution of the search.[7]

Here, a search request for electronic photos, emails, texts, and evidence of accessing the Craigslist.com website from on or about 8 April until on or about 13 April would have met the *Osorio* requirement. A review of the downloads folder on Appellant's computer would have fallen within the scope of the authorized search. Such a search would have discovered the anime images, as well as some of the other images of suspected child pornography. The discovery of those images, combined with a law enforcement official's knowledge and experience in child pornography cases, would have provided probable cause to seek additional search authorization for child pornography. *See United States v. Hoffmann*, 74 M.J. 542, 547 (N.M.C.C.A. 2014) (finding proper application of the inevitable discovery doctrine, allowing the search of Appellant's laptop, where the investigating agent knew Appellant had sexually propositioned young boys and possessed computers in his barracks room, as it was reasonable to conclude that "those who attempt to locate and then engage in sexual activity with children frequently first conduct some type of computer-based research"). As such, the evidence from Appellant's laptop would have been admissible.

While we are troubled by the careless actions of law enforcement in this case, we recognize that reliance on the notion that police negligence automatically triggers suppression cannot be squared with the principles underlying the exclusionary rule. As

---

[7] When dealing with search warrants for computers, practitioners must generate specific warrants and search processes necessary to comply with that specificity. *United States v. Osorio*, 66 M.J. 632, 637 (A.F.C.C.A. 2008). This court's ruling in *Osorio* acknowledged our superior court's holding in *United States v. Wallace*, 66 M.J. 5 (C.A.A.F. 2008) that pornography would have been inevitably discovered because the investigators would have had to sift through all the captured data to find relevant email traffic. *Osorio* also acknowledged Judge Baker's concurring opinion regarding the use of "primitive software to conduct computer searches" which he claimed did not excuse the resulting violation of Appellant's Fourth Amendment rights. *Wallace*, 66 M.J. at 12 (Baker, J., concurring). Here, there was testimony at the motion hearing from Appellant's forensic consultant that indicated computer forensics software did have the capability of searching for emails and texts by keyword search, not requiring someone to sift through all the data, meaning that it could have searched for the image sent to Appellant using the hashtag associated with the photo. (Detective M testified that he was unfamiliar with these capabilities.)

the Supreme Court has stated, "[t]he deterrent effect of suppression must be substantial and outweigh any harm to the justice system." *Herring v. United States*, 555 U.S. 135, 147 (2009) (citing *United States v. Leon*, 468 U.S. 897 (1984)). Thus, "when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.'" *Id.* at 147–148 (quoting *Leon*, 468 U.S. at 907 n. 6). In such cases, criminals should not "go free because the constable has blundered." *Id.* at 148 (quoting *People v. Defore*, 150 N. E. 585, 587 (1926) (opinion of the Court by Cardozo, J.)).

*Evidence of Solicitation of a Minor*

Appellant argues that the military judge improperly admitted evidence regarding the activities associated with Appellant soliciting a 13-year-old girl for sex. A military judge's decision to admit evidence is reviewed for an abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)).

Trial defense counsel filed a motion *in limine* to exclude the evidence surrounding the solicitation of a minor offense since it was irrelevant to the charge of possession of child pornography. In this case, the military judge applied the three-pronged test for determining admissibility of "other acts" evidence under Mil. R. Evid. 404(b) as set out in *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989). Our superior court summarized the *Reynolds* analysis, requiring us to ask: (1) whether the evidence reasonably supports a finding by the court members that Appellant committed prior crimes, wrongs or acts; (2) if a "fact . . . of consequence" is made "more" or "less" probable" by the existence of this evidence; and (3) is the "probative value . . . substantially outweighed by the danger of unfair prejudice?" *United States v. Barnett*, 63 M.J. 388, 394 (C.A.A.F. 2006) (alteration in original).

The military judge denied the motion, finding the evidence was relevant to the investigative actions of Detective M and to show the "identity" of Appellant. The military judge cited the fact that the events of the collateral investigation were inextricably intertwined with the discovery of the alleged child pornography. He found that the evidence was admissible for identity purposes because Appellant's computer showed a web history of him accessing the Craigslist.com website, which he allegedly used to solicit the fictitious underage girl; he also accessed websites focused on aircraft design, a hobby that Appellant told AFOSI he had an interest in. Therefore, the evidence had more than a tendency to show that Appellant was the owner of the computer that contained the alleged child pornography. The military judge recognized that a proper instruction restricting the evidence to its proper scope would provide an effective

prophylactic against any improper use of the evidence by the members. He gave such a limiting instruction:

> You may consider evidence that the accused may have used a computer and cell phone to solicit a minor for sex for the limited purpose of its tendency, if any, to identify the accused as the person who used the computer, which was seized by law enforcement, to commit the offense alleged in the Specification of the Charge or the lesser included offense of attempt. You may not consider this evidence for any other purpose and you may not concluded from this evidence that the accused is a bad person or has general criminal tendencies and that he has therefore committed the offense charged or the lesser included offense of attempt.

The computer at issue was found in Appellant's room, on the floor of his closet. No one else lived in the room. The computer had a user account that was associated with the name "Syd."[8] Although the ruling on the motion *in limine* indicated that the collateral investigation could be used to prove the identity of the computer's owner, the actual limiting instruction asserts that it could be used to prove only the identity of the user of the computer. Although the record does not indicate that any of the texts, emails, or photographs relevant to the civilian investigation were found on the computer, the Internet usage evidence showing the use of Craigslist.com and aircraft design websites was probative as to whether Appellant used the computer on the dates depicted in the network analysis evidence, which also documented child pornography searches on the computer.

The issue for the factfinders in this case was whether or not Appellant knowingly possessed images of child pornography. This was a joint investigation initially focused solely on the crime of computer-aided solicitation of a minor, which was handled by the civilian justice system. That investigation discovered evidence of possession of child pornography, the basis of the conviction before us. The military judge's *Reynolds* analysis concluded that Appellant used his computer to solicit a minor for sex, that the investigative efforts emanating from that conduct led to the discovery of the child pornography evidence, and that the probative value substantially outweighed the danger of unfair prejudice. The limiting instruction given by the military judge appropriately informed the members as to how the evidence could be used.

*Legal and Factual Sufficiency*

---

[8] During trial on the merits, the expert witness from the Defense Computer Forensics Laboratory (DCFL) testified that a Yahoo user account called "9tailfox61" was associated with a Skype profile named "syd-kyd." Additionally, he stated that "9tailfox61@yahoo.com" was the listed email address for Appellant.

We review issues of factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citing *United States v. Rogers*, 54 M.J. 244, 246 (C.A.A.F. 2000)).

Appellant contends his conviction in violation of Article 134, UCMJ, 10 U.S.C. § 934, was legally and factually insufficient to support the conviction because some of the images offered at trial were created and last written in 2011, before Appellant joined the military, and other images were found in unallocated space[9] on the hard drive of Appellant's computer.

The Specification did not list particular images, nor did it attribute a specific number of images. Appellant was charged with knowing and wrongful possession of child pornography, to wit: videos and digital images of a minor, and what appears to be a minor, engaging in sexually explicit conduct. At trial, the Government offered 6 videos of children engaged in sexual conduct; 10 images of children engaged in sexual conduct; 29 images of anime, depicting what appeared to be minors engaged in sexually explicit conduct or lascivious exhibitions of the genitals or pubic area; 1 screenshot of FrostWire software showing purported child pornography being downloaded to Appellant's computer; and 2 reports showing network analysis and web browser usage on Appellant's computer.[10] Three of the videos offered were found in the "program files incomplete" folder on the "syd-kyd" user account; two were found in the FrostWire directory and one

---

[9] "[U[nallocated space is the location on the computer where files are stored after having been permanently deleted. When a user permanently deletes a digital file that file continues to exist on the computer; however, it exists in unallocated space until the file is overwritten. Once a digital file is in unallocated space, the metadata associated with that file is stripped away (e.g. its name, when it was accessed, when it was viewed, when it was created, or when it was downloaded)." *United States v. Nichlos*, NMCCA 201300321, unpub. op. at 29 (N.M.C.C.A. 18 September 2014) (citations omitted).

[10] Prosecution Exhibit 1 was a CD that contained two folders and two PowerPoint presentations. One PowerPoint presentation contained the 29 anime images and the second contained keylogger screenshot captures. One folder contained evidence from the 3 December 2013 DCFL report: three videos and a PowerPoint presentation containing 24 slides. Those slides included one screenshot from each video, as well as 11 screenshots found in another video not independently offered as evidence. The last folder contained evidence from the 15 October 2013 DCFL report: two videos and a PowerPoint presentation containing 13 slides. These slides contained one screenshot from each video, 10 stand-alone digital images, and one screenshot from another video not independently offered as evidence.

was found in unallocated space. Of the 10 stand-alone images, seven were found in unallocated space, one was found in the FrostWire directory, one was found in system volume information,[11] and one was an orphan file.[12] The anime images were found in the "downloads" folder of the "syd-kyd" user account.

The Government presented strong circumstantial evidence that Appellant was the user of the computer. The computer's "syd-kyd" account was password-protected and the password was "KYUUVIMON." According to the forensic expert, *kyuuvi* could refer to a Japanese mythical animal, specifically a fox with nine tails. The computer had a Yahoo account ("9tailfox61"), and the "9tailfox61" user account was associated with the "syd-kyd" Skype profile. Further, "9tailfox61@yahoo.com" was the listed email address for Sydney Carpenter. The web browser report showed that the anime was downloaded to the computer seized from Appellant's room in April 2013. Although the expert witness could not forensically link the sites contained in this document to the anime images admitted into evidence, this document clearly shows Appellant's "syd-kyd" account both continuously accessing a variety of websites and intermittently accessing files in his downloads folder from about 2319 hours on 10 April 2013 through 0107 hours on 11 April 2013. The file names accessed included the 29 anime images admitted into evidence. Additionally, the web browser report showed Appellant's profile using Craigslist.com, which was directly linked to his arrest by the Caddo Parish Sheriff's Office.

Five of the six videos admitted into evidence were found in allocated space on Appellant's computer in folders owned by the user "syd-kyd." Four of these videos were originally created in 2011 and viewed either while they were downloading or after the download was complete. The fifth was generated by a backup program in September 2012. Additionally, some of them were viewed more than once. The images depicted on slides 2 through 12 of the 3 December PowerPoint presentation on Prosecution Exhibit 1 came from a video also found in allocated space on Appellant's computer; it was attributable to the user "syd-kyd" and was created in 2011.

The overwhelming circumstantial evidence supports that Appellant viewed videos of child pornography on his personal computer; and that he, through the use of the FrostWire program, downloaded numerous child pornographic videos onto the hard drive of his computer. Despite the fact that four of the videos may have originally been downloaded in 2011 and one in 2012, only one video was no longer on Appellant's computer when it was forensically examined.[13] Based on these facts, we find Appellant

---

[11] The forensic expert witness testified that a file located in system volume information indicates it was on the computer at some point and backed up by the operating system.

[12] The forensic expert witness testified that a lost or orphan file no longer has its logical path as to where it resided on the computer, but that file existed on the computer at some point in time.

[13] Only the video found on slide 11 of the 15 October PowerPoint presentation on Prosecution Exhibit 1 was found in unallocated space.

knowingly and consciously possessed the four videos and exercised the dominion and control necessary to constitute "possession" of them. Additionally, the image depicted on slide 3 of the 15 October PowerPoint presentation was found in the FrostWire folder. Therefore, the evidence is factually and legally sufficient to convict Appellant of wrongfully and knowingly possessing one or more visual depictions of minors engaging in sexually explicit conduct.

We reach a different result as to whether Appellant possessed the sexually explicit images depicted on slides 6–9 and 14 of the 15 October PowerPoint presentation. These images were found in unallocated space, with some of them also appearing as a thumbcache file or in system volume information. The forensic examiner testified the thumbnail images were automatically created by the computer when a user viewed an image or video on the computer or when the computer conducted a system backup at a given point, and they remained even after the original image was deleted. The forensic examination did not find the original images or videos that resulted in the creation of these thumbnails. The forensic examiner could not determine the file names of the original images or videos that resulted in these thumbnails, nor could he determine when they were downloaded or viewed. Therefore, there is not proof beyond a reasonable doubt that Appellant was the one who viewed them. Furthermore, these thumbnails were found in areas of the computer that an average computer could not access without specialized computer software, none of which was found on Appellant's computer. While the existence of duplicate copies of some of these images could conceivably support a finding that Appellant exerted dominion and control of the images, there was no evidence as to whether any actions involving these images occurred during the charged timeframe.

However, under the general verdict rule, the fact that some of the images considered by the members were not legally sufficient does not require the conviction to be overturned. *See United States v. Barbieri*, 71 M.J. 127 (C.A.A.F. 2012), *overruled by United States v. Piolunek*, 74 M.J. 107, 111–112 (C.A.A.F. 2015) ("[C]onvictions by general verdict for possession and receipt of visual depictions of a minor engaging in sexually explicit conduct on divers occasions by a properly instructed panel need not be set aside after the [service court] decides several images considered by the members do not [meet that standard].").

Lastly, we address the anime pornography. This is due, in part, because the Specification charged Appellant with knowingly and wrongfully possessing "videos and digital images of a minor, *and* what appears to be a minor, engaging in sexually explicit conduct," rather than "or," as is typically charged. As previously stated, 29 images were admitted. Possession of anime is prohibited by Article 134, UCMJ, if it depicts what appears to be children engaged in sexually explicit conduct or if it is obscene. *See United States v. Williams*, 553 U.S. 285, 288 (2008). We agree with the military judge's ruling that the 29 images of anime admitted in this case constitute visual depictions of what

appear to be children engaged in sexually explicit conduct, specifically graphic images of simulated sexual intercourse or sodomy, including genital-genital, oral-genital, anal-genital, or oral-anal intercourse, whether between persons of the same or opposite sex; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area.

We have considered the elements of the charged offense. We have considered the evidence in the light most favorable to the prosecution and find the evidence legally sufficient to support the conviction that Appellant knowingly possessed multiple images of minors and what appear to be minors engaged in sexually explicit conduct. Moreover, having made allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt beyond a reasonable doubt of the approved Charge and Specification.

*Trial Counsel's Sentencing Argument*

Improper argument involves a question of law that this court reviews de novo. *United States v. Marsh*, 70 M.J. 101, 106 (C.A.A.F. 2011). "The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). Where improper argument occurs during the sentencing portion of the trial, we determine whether or not we can be "confident that [the appellant] was sentenced 'on the basis of the evidence alone.'" *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013) (alteration in original) (quoting *United States v. Erickson*, 62 M.J. 221, 224 (C.A.A.F. 2007)).

Appellant asserts that trial counsel intended to invoke the members' passions and fears by castigating Appellant as the reason child pornography exists. Trial defense counsel objected on five occasions and the military judge sustained four of them. The judge sustained objections based on facts not in evidence regarding counsel's statements of "the widespread supply of child pornography," that "child pornography exists because of the demand," that "the children depicted in these images and videos lived through these events . . . they will have to live their life understanding," and counsel's utterance of the word "scars" when discussing the victims. Appellant now asserts that sustaining the objections was not sufficient and that a curative instruction should have been given asserting that the argument was improper and should be given no weight. Appellant concludes that there can be no doubt that the argument weighed on the members as they adjudged a sentence and requests that the bad-conduct discharge be disapproved.

The Government asserts that the military judge erred in sustaining the objections, opining that counsel's argument was proper, and further notes that a proper curative instruction was given. The "curative instruction" cited by the Government was, in fact, part of the judge's rationale in sustaining an objection concerning victims' "scars," and

the judge noted that no evidence of victim impact had been introduced. The Government further claims that counsel's argument had no effect on the members' adjudged sentence since it was only 20 percent of the punishment requested.

Trial counsel is entitled "to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Baer*, 53 M.J. at 237. However, the Rules for Courts-Martial and existing case law both establish that it is error for trial counsel to make arguments that "'unduly . . . inflame the passions or prejudices of the court members.'" *Marsh*, 70 M.J. at 102 (quoting *United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007)). Trial defense counsel objected five times during trial counsel's argument, and the military judge sustained four of the five objections. We are confident Appellant was sentenced on the basis of the evidence alone.

*Impossibility Instruction*

We review de novo the military judge's instructions to ensure that they correctly address the issues raised by the evidence. *United States v. Maynulet*, 68 M.J. 374, 376 (C.A.A.F. 2010). Generally, a military judge has "'substantial discretionary power'" to decide whether to issue a jury instruction. *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002) (quoting *United States v. Damatta-Olivera*, 37 M.J. 474, 478 (C.M.A. 1993)). If we find error, we must determine whether the error was harmless beyond a reasonable doubt. *United States v. Medina*, 69 M.J. 462, 465 (C.A.A.F. 2011).

Trial defense counsel requested the military judge give a special instruction asserting that Appellant was physically unable to control the images in unallocated space because the computer did not contain the requisite software. The Record of Trial does not contain either the draft instructions or the proposed instruction submitted by the defense. Consequently, the only record of the proposed instruction comes from the Article 39(a), UCMJ, 10 U.S.C. § 839(a), session concerning the proposed instructions. Defense counsel refers to a model instruction concerning physical impossibility contained in the Military Judges' Benchbook. Department of the Army Pamphlet (D.A. Pam.) 27-9, *Military Judges' Benchbook*, ¶ 5-9-1 (1 January 2010). The crux of that model instruction involves a scenario where a potential physical condition of Appellant made it physically impossible for him to obey an order or perform a duty. The military judge opined that the proposed instruction was "non-standard" and more along the lines of "legal impossibility." The military judge ultimately concluded that the requested instruction was not supported by fact, specifically stating that the absence of software necessary to view the images at the time of the forensic examination was not dispositive, since there was no evidence that the images had been in unallocated space prior to the first date of the charged time frame. We hold that the military judge did not err in refusing to instruct in accordance with Appellant's request at trial.

*Conclusion*

The approved finding and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved finding and sentence are

AFFIRMED.


FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court